IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE CO., | |
| Plaintiff. | |
| v. | Civil Action Number 3:05CV159 |
| ALFRED GROSS, et al., | |
| Defendants. | |

## **MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendants Kenneth R. Patterson's and Carolyn B. Hudgins' Motion for Preliminary Injunction. For the reasons outlined below, the Motion for Preliminary Injunction is hereby GRANTED.

I.

Defendants Patterson and Hudgins (collectively "Moving Defendants") are former officers and directors of Reciprocal of America ("ROA") and its Attorney-in Fact, The Reciprocal Group ("TRG"). Moving Defendants are insured under a directors and officers liability insurance policy (the "Policy") issued by Plaintiff Great American Insurance Company ("Great American" or "Plaintiff"). Pursuant to the Policy, Plaintiff must advance Moving Defendants' and other insureds the costs of defense for claims made against them for wrongful acts.[1]

---

[1] The Policy reads, in pertinent part, as follows:
[I]f, during the Policy Period...any Claim...is first made against the Directors or Officers, individually or collectively, for a Wrongful Act, the Insurer will pay on behalf of the Directors or Officers all Loss which the Directors or Officers shall be legally obligated to pay.
See Defs. Mot. For Prelim. Injunct., Ex. C, Policy at D809, amendment to § IV(D).

The Policy states that Plaintiff shall:

[A]dvance Costs of Defense for any payments made on behalf of the Directors and Officers...prior to the final disposition of any Claim....on the condition that the Directors and Officers...provide a written undertaking satisfactory to the Insurer providing that in the event it is finally established that the Insurer has no liability under [the] Policy to Directors and Officers...for such Claim, such Directors and Officers...agree to repay the Insurer upon demand all Costs of Defense advanced on their behalf by virtue of this provision.

See Policy at D710, § VIII(L).The Policy also contains a provision excluding Plaintiff from liability in cases of fraud (the "Fraud Exclusion"). The Fraud Exclusion provision states that:

[Great American] shall not be liable to make any payment for Loss in connection with any Claim made against the Directors or Officers...brought about or contributed to by the fraudulent, dishonest, or criminal acts of the Directors or Officers or Company; provided, however that this exclusion shall not apply unless a judgement [sic] or final adjudication established in fact that such conduct did occur.

See Policy at D717, § IV(D). In 1999, Plaintiff issued a renewal of the Policy to TRG covering the period between December 1, 1999, and December 1, 2002. The Policy coverage period was later extended to December 31, 2002. The Policy's limit of liability was increased from $10 million to $20 million, effective March 21, 2001.[2]

Moving Defendants are currently named as defendants in thirteen separate lawsuits pending in a multi-district litigation action ("MDL Action") and in two Alabama State courts (collectively the "ROA litigation").[3] The actions pending in the ROA litigation allege that the directors and

---

[2]The Policy's limit of liability is the maximum amount of coverage available under the Policy collectively to all insureds for all "loss, including any costs of defense."

[3]Ten of the actions are consolidated in a multi-district litigation action in the United States District Court for the Western District of Tennessee. See In re Reciprocal of Am. (ROA) Sales Practice Litig., 281 F. Supp.2d 1356, 1358 (J.P.M.L. 2003). The Alabama actions consist of two actions filed in the Montgomery County Circuit Court, Baptist Health Sys., Inc. v. Gen. Reinsurance Corp., Case No. CV-04-1757, and Alabama Hosp. Ass'n v. Gen. Reinsurance Corp., Case No. CV-04-1172, and one action filed in the Jackson County Circuit Court, Howe v. The

officers of TRG/ROA and the affiliated entities engaged in a conspiracy to hide the true financial condition of these entities by defrauding insurance department regulators, insurance rating services, and policyholders into believing that they were financially solvent companies, when in fact, they were not. See Pl. Resp., Ex. E., Gross Am. Compl. ¶ 35.

On February 7, 2005, Moving Defendants pled guilty to federal offenses in the United States District Court for the Eastern District of Virginia. Specifically, Patterson pled guilty to conspiracy to commit insurance fraud, in violation of title18 U.S.C. §§ 1033 and 371, and two counts of mail fraud, in violation of title 18 U.S.C. § 1341. Hudgins pled guilty to conspiracy to commit insurance fraud, in violation of title 18 U.S.C. §§ 1033 and 371. Both Patterson and Hudgins admitted to engaging in fraudulent and criminal conduct by misrepresenting the true financial condition of ROA to the Virginia Commission of Insurance, and the ROA Board of Directors, and the subscribers of ROA.

After learning of Moving Defendants' guilty pleas, Plaintiff filed the present action on March 4, 2005. Plaintiff has brought suit against: (1) Alfred W. Gross, Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as the Deputy Receiver of TRG and ROA, in receivership; (2) Paula A. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee, as Liquidator for Doctors Insurance Reciprocal ("DIR"), American National Lawyers Insurance Reciprocal ("ANLIR"), and the Reciprocal Alliance ("TRA") (collectively the "Risk Retention Groups" or "RRGs"); (3) Kenneth R. Patterson, former President and CEO of TRG/ROA; (4) Carolyn B. Hudgins, former Executive Vice President of TRG/ROA;

---

Jackson County Healthcare Auth. d/b/a North Jackson Hosp., Case No. CV05-36.

(5) John William Crews; (6) Judith A. Kelly; (7) Richard W.E. "Dicky" Bland; (8) Ronald K. Davis, M.D.; (9) Gordon D. McLean; (10) Thomas K. Smith; (11) Gerald R. Wages; (12) William T. Sugg; (13) John N. Bethay; and (14) Does 1-50.

On March 4, 2005, Plaintiff stopped advancing Moving Defendants costs of defense payments. Plaintiff continues to advance defense costs to those insureds under the Policy who have not pled guilty to criminal acts. Moving Defendants filed the instant motion for preliminary injunction on March 28, 2005. On April 11, 2005, Plaintiff filed a Response in Opposition to Moving Defendant's motion.[4] Moving Defendants seek a preliminary injunction ordering Plaintiff to maintain the status quo by continuing to advance the costs of their defense in the numerous civil actions pending in the ROA litigation. Oral argument in this matter was held on April 21, 2005.

Plaintiff states that eleven individual former directors and/or officers of ROA/TRG and/or the RRGs have made claims for coverage under the Policy in respect to the ROA litigation. Plaintiff alleges that it has advanced approximately $2.87 million to defend the various directors and officers insured under the Policy. Plaintiff submits that $670,066.37 of that amount is attributable to the costs to defend Patterson and Hudgins in the ROA Litigation.

II.

Preliminary injunctions represent an extraordinary remedy and should "be granted only sparingly and in limited circumstances." Microstrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quotations and citations omitted). Since the courts act on an incomplete record in granting such relief, the risk of mistake is greater and, consequently, any party seeking such injunctive relief must clearly establish its entitlement to the relief sought. Hughes Network Syss. v.

---

[4]Plaintiff's motion is joined by Defendant Paula Flowers.

Interdigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994). The Fourth Circuit has held that courts must consider the following four factors in determining whether or not to grant a preliminary injunction: (1) The likelihood of irreparable harm to the plaintiff; (2) the likelihood of harm to the defendant if the injunction is granted; (3) the likelihood the plaintiff will succeed on the merits; and (4) the public interest. See Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 196 (4th Cir. 1977).

Under the Blackwelder test, the district court must first compare the likelihood of irreparable harm to the plaintiff with the potential harm the defendant will experience from the grant of preliminary injunctive relief. If the balance of hardship tips decidedly in the plaintiff's favor, then the district court may grant a preliminary injunction if it determines that the dispute presents a serious issue for litigation and that the injunction will serve the public interest. Merrill, Lynch, Pierce, Fenner & Smith v. Bradley, 756 F.2d 1048, 1054-55 (4th Cir. 1985). "If the balance of harm strongly favors the plaintiffs, it is not required that the plaintiffs make a strong showing of likelihood of success on the merits. This is because the hardship balancing test is a 'sliding scale' approach and 'the more the balance of irreparable harm inclines in the plaintiffs' favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction.'" Stuart Circle Parish, 946 F. Supp. 1225, 1234 (E.D. Va. 1996) (quoting Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1992)).

III.

A. Preliminary Injunction as Proper Form of Relief

Plaintiff argues that Moving Defendants' motion for a preliminary injunction is improper because the injury they complain of, breach of contract, is capable of being measured and corrected

5

by an award of money damages alone. However, "[e]ven if a loss can be compensated by money damages at judgment [] extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction." Hughes Network Syss., Inc., 17 F.3d at 694. In the case at bar, there is more at stake than the award of monetary damages due to breach of contract. Moving Defendants face the potential of irreparable harm due to the massive and complex civil lawsuits pending against them and the risk of losing the benefit of long-standing counsel in those cases. Accordingly, Moving Defendants do not have an adequate remedy at law because they face extraordinary circumstances that could lead to irreparable injury that cannot be measured in monetary damages.

B. Applicability of Mandatory Injunction Standard

Plaintiff argues that even if Moving Defendants are permitted to seek injunctive relief, the motion should be treated as a request for a mandatory injunction. See e.g. Tiffany v. Forbes Custom Boats, Inc., No. 91-3001, 1992 WL 67358, at *6 (4th Cir. Apr. 6, 2002) (unpublished disposition) (noting that a mandatory injunction is a preliminary injunction that disturbs the status quo, is mandatory as opposed to prohibitory, or "affords the movant substantiality all the relief he may recover at the conclusion of a full trial on the merits") (citing SCFC ILC, v. Visa USA, Inc., 936 F.2d 1096, 1998-99 (10th Cir. 1991)). Plaintiff first argues that Moving Defendants are seeking mandatory injunctive relief because any additional amounts advanced to Moving Defendants would change the status quo by further depleting the Policy's liability limit[5]. Second, Plaintiff argues that Moving Defendants are asking the Court to order mandatory, affirmative relief because they are requesting that Plaintiff resume advancing defense costs to them. Lastly, Plaintiff asserts that the

---

[5]Plaintiff contends that the status quo is the post-plea situation where advancement of defense costs have been terminated.

relief is mandatory because an injunction would afford Moving Defendants substantially all the relief they might recover if they won a full trial on the merits.

Moving Defendants are seeking preliminary injunctive relief, and not mandatory injunctive relief. First, it appears that Plaintiff has changed the status quo by denying to advance Moving Defendants their costs of defense. This change was based on the unilateral decision of one party, made at the same time this suit was initiated. Second, Moving Defendants are not seeking all the relief that they would be entitled to if the won on the merits of this case. Moving Defendants are seeking a limited amount of costs of defense coverage under the Policy until the Court can make a determination regarding Plaintiff's rescission and declaratory judgment claims. If Moving Defendants were to succeed on the merits of this case, they would be entitled to the costs of defense until a final adjudication was reached in the ROA Litigation. Third, the plain language of the Policy obligates Plaintiff to advance defense costs until it is finally established that Plaintiff is not liable under the Policy. See In re Worldcom, Inc., 354 F. Supp.2d 455, 463 (S.D.N.Y. 2005) ("Where a preliminary injunction grants only part of the relief to which a movant would be entitled on the merits and 'requires a party to do what it should have done earlier' then it is judgment under the standard for prohibiting injunctions, and not... for mandatory injunctions.") (quoting Johnson v. Kay, 860 F.2d 529, 541 (2d Cir. 1988). Accordingly, the Court finds that Moving Defendants are seeking prohibitory injunctive relief in this action.

C. Likelihood of Irreparable Harm to the Moving Party if Injunction is Denied

Moving Defendants face massive civil liability due to the complex, fact intensive actions pending in the ROA litigation. Moving Defendants have been represented by Hirschler Fleischer in the ROA litigation for over two years. The practical effect of Plaintiff's failure to advance costs of

defense to Moving Defendants would be to cause Hirschler Fleischer to withdraw as Moving Defendants' counsel leaving them without representation in the ROA litigation. Accordingly, denial of a preliminary injunction would essentially cripple Moving Defendants' defense and leave them with no ability to defend their interests in the ROA litigation. Since Moving Defendants face a risk of great financial harm if a preliminary injunction is denied, they have established irreparable harm under Blackwelder.

D. Likelihood of Harm to the Non-Moving Party if Injunction is Granted

Plaintiff argues that it will be severely harmed if a preliminary injunction is granted. Plaintiff asserts that the extraordinary relief requested by Moving Defendants would require Plaintiff to make immediate payments to Moving Defendants when no such payment is required under the Policy. Plaintiff further argues that if Moving Defendants do not have the money to fund their defense, Plaintiff will not be able to recoup any amount advanced to them or any of the already expended $670,066.37. Lastly, Plaintiff submits that an injunction will further dissipate the limited funds available in this case and will force Plaintiff to compete with dozens of other claimants in an attempt to recoup amounts advanced to two convicted criminals, post-conviction. See Riddler v. Cityfed Financial Corp., 853 F. Supp. 131, 138 (D. N.J. 1994) (overruled on other grounds) ("Given the uncertainty of plaintiffs' ability to repay amounts advanced if they are ultimately unentitled to those amount, the relief plaintiffs seek might well have the effect of giving priority to invalid claims, to the detriment of legitimate creditors.")

While it is true that Plaintiff will be exposed to increased monetary liability in this matter if a preliminary injunction is granted, this monetary liability was contractually agreed to by the parties. Plaintiff is currently advancing costs of defense to other defendants in this action and Plaintiff would

still be advancing costs of defense to Moving Defendants but for the guilty pleas entered in their related criminal cases. Plaintiff cannot be irreparably harmed by doing that which it agreed to do under the plain language of the Policy or by doing what it was contractually obligated to do. Moreover, if Plaintiff is successful on the merits of its rescission/declaratory judgment action, Plaintiff can seek reimbursement for the costs of defense under the terms of the Policy. The potential harm to Plaintiff if an injunction is granted is significantly lower than the irreparable harm that will occur to Moving Defendants if an injunction is denied. Accordingly, the balance of the harms tips decidedly in Moving Defendants' favor.

E. Likelihood Moving Party will Succeed on the Merits

Plaintiff argues that Moving Defendants are not contractually entitled to advancement of defense costs in this case because the Fraud Exclusion[6] bars coverage. See Anglo-Am. Ins. Co. v. Molin, 691 A.2d 929, 934 (Pa. 1997) (holding that "[i]n the absence of a clear right to recover, it was error to issue the preliminary injunction" requiring insurer to pay defense costs pending decision in coverage action). Plaintiff states that in order for the Fraud Exclusion to apply, there must be (1) a final adjudication or judgment establishing that "fraudulent, dishonest, or criminal acts of the Directors or Officers" occurred and (2) that such "fraudulent, dishonest, or criminal acts" brought about or contributed to any Claim.

---

[6]As indicated above, the Fraud Exclusion states:
The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Directors or Officers brought about or contributed to by the fraudulent, dishonest, or criminal actions of the Directors or Officers of the Company; provided, however, that this exclusion shall not apply unless a judgement [sic] or final adjudication establishes in fact that such conduct did occur.
See Policy at D717, § IV(D).

First, Plaintiff argues that Moving Defendants' guilty pleas and the Court's acceptance of those pleas constitutes "judgments" establishing that the fraudulent, dishonest, or criminal acts to which they pled guilty to did occur. Second, Plaintiff submits that the facts show that the underlying actions in the ROA litigation were brought about or contributed to by Moving Defendants' fraudulent, dishonest, or criminal acts. Specifically, Plaintiff asserts that Moving Defendants have been found guilty of misrepresenting the true financial condition of ROA to the Virginia Commissioner of Insurance and the board of directors and subscribers of ROA. Plaintiff insists that it is undisputed that Moving Defendants' fraudulent acts brought about or contributed to each and every one of the underlying actions in the ROA litigation.

The moving party is not required to make a strong showing of likelihood of success on the merits when the balance of harms tips decidedly in favor of the moving party and the case raises grave or serious questions. See James A. Meritt & Sons v. Marsh, 791 F.2d 328, 330 (4th Cir. 1986) (citing Blackwelder, 550 F.2d at 195). In the case at bar, Moving Defendants have demonstrated that the balance of the hardships tilts decidedly in their favor because they face serious, imminent, and irreparable harm as a result of Plaintiff withholding the costs of defense.

Furthermore, the decision of whether the fraudulent conduct admitted to by Moving Defendants in their respective criminal cases "contributed to" or "brought about" the underlying claims in the ROA litigation has yet to be determined by the Court. The mere entry of their guilty pleas is not enough to bar entitlement to Policy benefits under the Fraud Exclusion. Accordingly, there is a substantial issue to be determined as to the applicability of the Fraud Exclusion. Since that balance of harms tips decidedly in favor of the Moving Defendants and the case raises grave or serious questions, this prong of Blackwelder has been satisfied.

F. <u>Public Interest</u>

Public policy is served by requiring Plaintiff to continue forwarding the costs of defense to Moving Defendants because it is in the public interest to see parties abide by their contractual obligations.

G. <u>Bond</u>

Pursuant to Federal Rule of Civil Procedure 65, "[n]o...preliminary injunction shall issue except upon giving of security by the applicant, in such sum as the court deems proper." Fed. R. Civ. Pro. 65. Moving Defendants have submitted affidavits to the Court that they lack the financial resources to pay for the costs of their defense in the ROA litigation. Based on these affidavits, it is clear that Moving Defendants lack the financial resources and assets to post a bond in a meaningful amount. Accordingly, the Court finds that a bond of zero dollars is appropriate in this case.

IV.

Moving Defendants have met their burden under <u>Blackwelder</u>. For the reasons expressed above, Moving Defendants' Motion for Preliminary Injunction is GRANTED.

  /s/ James R. Spencer  
UNITED STATES DISTRICT JUDGE

 MAY 3, 2005  
DATE