IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE CO., <br><br> Plaintiff. <br><br> v. <br><br> ALFRED W. GROSS, et al., <br><br> Defendants. | Civil Action Number 3:05CV159-JRS |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on the Motion to Dismiss of Defendants John Crews ("Crews"), Judith Kelley ("Kelley"), and Gordon McLean ("McLean") (collectively "Movants"), filed on May 6, 2005, and Defendant Thomas Smith's ("Smith") Motion to Dismiss filed on May 11, 2005. For the reasons addressed below, Movants' motion is GRANTED and Smith's motion is DISMISSED AS MOOT.

**I. BACKGROUND**

On February 7, 2005, Defendants Kenneth R. Patterson ("Patterson") and Carolyn B. Hudgins ("Hudgins"), two former officers of The Reciprocal Group ("TRG") and Reciprocal of America ("ROA")[1], pled guilty to insurance fraud. See United States v. Patterson, No. 3:05CR48 (E. D. Va. 2005) and United States v. Hudgins, No. 3:05CR47 (E. D. Va. 2005). Both Patterson and Hudgins

---

[1]TRG is a Virginia non-stock corporation that served as the management company and attorney-in-fact for ROA. ROA, now in receivership, is a Virginia unincorporated association and reciprocal insurer of doctors, hospitals, medical worker's compensation, directors and officers liability, and lawyer professional liability risks.

admitted to conspiring to make false material statements and reports in connection with financial reports and documents presented to an insurance regulatory agency.

Plaintiff Great American Insurance Company ("Great American" or "Plaintiff") is the insurer of the former directors and officers of the now-defunct ROA and its affiliated entities. In late 1999, TRG/ROA submitted a request for renewal of its Directors and Officers Liability Insurance (the "Policy") to Plaintiff. On or about January 4, 2000, Plaintiff received a copy of the Policy Proposal Form (the "Proposal Form") which was signed by Patterson.[2] Based on Plaintiff's review of the completed Proposal Form, attached financial statements and balance sheets, Plaintiff issued the Policy to TRG/ROA. The original Policy period covered December 1, 1999, to December 1, 2002, and was subject to a $10 million limit of liability.[3] The Policy's limit of liability is the maximum amount of coverage available under the Policy collectively to all insureds for all loss, including any costs of defense.

In early 2001, TRG/ROA sought to increase the Policy's limit of liability. On April 2, 2001, Plaintiff received a completed Increased Limits Proposal Form from TRG/ROA.[4] Before agreeing to the increase, Plaintiff required TRG/ROA to submit certain documents[5] and to answer question

---

[2] Attached to the Proposal Form was a copy of the annual report, with complete audited financial statements for the most recent three years, and the latest interim financial statement.

[3] The Policy period was extended to December 31, 2003, for wrongful acts committed before December 31, 2002.

[4] Plaintiff states that it erroneously alleged that it received the executed Increased Limits Proposal Form on April 2, 2001, in its Complaint. Plaintiff contends that the correct date is May 16, 2001. Plaintiff submits that it is circulating a proposed Amended Complaint to address this issue.

[5] A copy of TRG/ROA's most recent Annual Report and a statement of income was submitted with the Increased Limits Proposal Form.

number 7 on the Increased Limits Proposal Form which asks:

> Is the undersigned or any Director or Officer proposed for the increased Limit of Liability aware of any fact, circumstance or situation involving the Company or its subsidiaries or the Directors or Officers of the Company or its Subsidiaries which he has reason to believe might result in any future Claim which would fall within the scope of the increased Limit of Liability? If "Yes," provide details.

Patterson signed the Increased Limits Proposal Form and responded "No" to this question. In May 2001, Plaintiff increased the Policy's limit of liability to $20 million in exchange for an additional premium and subject to certain conditions (the "Policy Increase").

After learning of Patterson's and Hudgins' guilty pleas, Plaintiff filed the present action on March 4, 2005. Plaintiff has brought suit against: (1) Alfred W. Gross ("Gross"), Commissioner of Insurance, Bureau of Insurance, State Corporation Commission of the Commonwealth of Virginia, as the Deputy Receiver of TRG and ROA, in receivership; (2) Paula A. Flowers ("Flowers"), Commissioner of Commerce and Insurance for the State of Tennessee, as Liquidator for Doctors Insurance Reciprocal ("DIR"), American National Lawyers Insurance Reciprocal ("ANLIR"), and the Reciprocal Alliance ("TRA") (collectively the "Risk Retention Groups" or "RRGs"); (3) Patterson, former President and CEO of TRG/ROA; (4) Hudgins, former Executive Vice President of TRG/ROA; (5) Crews; (6) Kelly; (7) Richard W.E. "Dicky" Bland ("Bland"); (8) Ronald K. Davis, M.D. ("Davis"); (9) McLean; (10) Smith; (11) Gerald R. Wages ("Wages"); (12) William T. Sugg ("Sugg"); (13) John N. Bethay ("Bethay"); and (14) Does 1-50.

Plaintiff alleges that Patterson and Hudgins gave false information in order to procure the Policy and to obtain the $10 million Policy Increase. Plaintiff alleges four counts in its Complaint: (1) Rescission- Against all Defendants; (2) Declaration of No Coverage Obligating Defendants Patterson, Hudgins, Crews, Kelley, Bland, Davis, McLean, Smith, and Sugg, to refund Costs of

Defense; (3) Declaration of No Coverage Under the Fraud Exclusion Against Patterson; and (4) Declaration of No Coverage Under the Fraud Exclusion Against Hudgins. See Compl. at 22-26.

As of May 20, 2005, Plaintiff has advanced approximately $2.8 million in costs of defense to certain defendants in this action due to a multi-district litigation action in Tennessee and three parallel actions in the Alabama state courts.[6] The related multi-district litigation actions ("MDL Actions") are pending before Judge J. Daniel Breen in the Western District of Tennessee. The MDL Actions consist of ten separate cases alleging that "various combinations of overlapping defendants conspired to mislead plaintiffs and putative class members with respect to the financial stability of certain insurance companies that provided professional malpractice coverage to the plaintiffs." In re Reciprocal of Am. (ROA) Sales Practice Litig., 281 F. Supp.2d 1356, 1358 (J.P.M.L. 2003).

The plaintiffs in the MDL Actions are Gross, Flowers, former policyholders of ROA and the RRGs, and five Missouri associations and corporations in healthcare and healthcare related insurance businesses. The defendants in the MDL Actions are: General Reinsurance Corporation and three of its officers; Milliman USA, Inc. and one of its principals; PriceWaterhouseCoopers, LLP and one of its partners; Wachovia Bank, National Association; Crews & Hancock, P.L.C.; and Atlantic Security, Ltd. and one of its employees. The Panel on Multi-District Litigation (the "Panel") denied joinder of this matter with the other consolidated MDL Actions.

On May 6, 2005, Movants filed a motion to dismiss Plaintiff's Complaint on two grounds: (1) the discretionary authority of the Court to dismiss declaratory judgment actions; and (2) pursuant

---

[6]The Alabama actions consist of two actions filed in the Montgomery County Circuit Court, Baptist Health Sys., Inc. v. Gen. Reinsurance Corp., Case No. 04-1757, and Alabama Hosp. Ass'n v. Gen. Reinsurance Corp., Case No. CV-04-1172, and one action filed in the Jackson County Circuit Court, Howe v. The Jackson County Healthcare Auth. d/b/a North Jackson Hosp., Case No. CV05-36.

to Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary or indispensable party. Hearing in this matter was held on July 27, 2005. Defendants Patterson, Hudgins, Wages, and Smith have filed motions adopting Movants' motion to dismiss. Plaintiff objects to Patterson's, Hudgins', and Wages' adoption of this motion. Smith filed a separate motion to dismiss under Rule 12(b)(6) based on Federal Rule of Civil Procedure 9 and equitable concerns.

## II. MOVANTS' MOTION TO DISMISS

### A. Court's Authority to Dismiss or Stay this Action

Federal district courts have discretionary authority to determine whether to entertain actions seeking declaratory judgment. See Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); Mitcheson v. Harris, 955 F.2d 235, 239 (4th Cir. 1992). "[A] federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that declaratory relief sought (i) will serve a useful purpose in clarifying and settling the legal relations in issue and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) (internal citations omitted)). A declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256-57 (4th Cir. 1996) (quoting Quarles, 92 F.2d at 325).

"When a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy 'can better be settled in the proceeding pending in the state court.'" Poston, 88 F.3d at 257 (citing Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)). The court should also consider issues of comity, federalism, and efficiency. Mitcheson,

955 F.2d at 237-41. The Fourth Circuit has stated that when considering whether to exercise jurisdiction over a motion for declaratory judgement a district court should look at the four Nautilus factors:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [] (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law" [; and (iv)] whether the declaratory judgment action is being used merely as advice for "procedural fencing"– that is, "to provide another forum in a race to *res judicata*" or "to receive a federal hearing in a case otherwise not removable.

Poston, 88 F.3d at 257 (citing Nautilus, 15 F.3d at 377).

Plaintiff argues that consideration of the Nautilus factors is improper in this case because the four-factor inquiry is only appropriate in instances "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495. Plaintiff asserts that this limitation is appropriate because considerations of federalism, efficiency, and comity come into play only when a related state court proceeding is pending. See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004). Accordingly, Plaintiff argues that the factors do not need to be considered here because there is no pending state court, or federal court action that involves the same parties or the same issues.

The pendency of a parallel state court action is not a necessary prerequisite to a court's decision determining whether to exercise jurisdiction over a declaratory judgment action. Mut. Benefit Ins. Co. v. Lorence, 189 F. Supp.2d 298, 301 (D. Md. 2002) (stating that the pendency of a parallel state action is not a prerequisite in order for the court to dismiss a declaratory judgment action). Without deciding whether the related cases pending in the Alabama state courts and in the

MDL Actions constitute "parallel actions," it is clear that the existence or non-existence of parallel proceedings does not prohibit the Court from exercising its discretionary authority to dismiss a declaratory judgment action. Aetna Cas. & Sur. Co. v. Ind-Com Elec., 139 F.3d 419, 423 (4th Cir. 1998) ("[T]he existence or non-existence of a state court action is simply one consideration relevant to whether to grant discretionary relief."); see also Lorence, 189 F. Supp.2d at 301. ("While the most common circumstance justifying a district court's dismissal of a declaratory judgment action is the pendency of a parallel state court action, that circumstance is not a necessary prerequisite.").

Alternatively, Plaintiff contends that since this case is not solely a declaratory judgment action, dismissal or abstention is inappropriate. Plaintiff asserts that "when other claims are joined in an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other money relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." United Nat'l Ins. Co. v. R&D Latex Corp., 242 F.3d 1102, 1112 (9th Cir. 2001). Plaintiff also notes that courts have recognized that actions to rescind an insurance contract are distinct from actions to interpret an insurance contract and have held that district courts in such cases have a "virtually unflagging obligation to exercise jurisdiction." First State Ins. Co. v. Callan Assoc., Inc., 113 F.3d 161, 163 (9th Cir. 1997) (citing Home Ins. Co. v. Townsend, 22 F.2d 91, 92 (5th Cir. 1994).

Plaintiff further argues abstention or dismissal is improper because many defendants in this action have asserted counterclaims for breach of contract. Plaintiff asserts that the Fourth Circuit has held that a district court lacks authority to abstain from exercising jurisdiction over breach of contract claims. Myles Lumber Co. v. CNA Fin. Corp., 233 F.3d 821, 823 (4th Cir. 2000) ("[A]

district court may stay an action seeking damages, but generally may not subject it to 'outright dismissal or remand.'").

While it is true that Plaintiff's claim asks the Court for rescission of the Policy, as well as declaratory relief, the substantive claims are so closely tied to the declaratory judgment claims, that consideration of the Nautilus factors is warranted. See Gatewood Lumbar, Inc. v. Travelers Indem. Co., 898 F. Supp. 364, 366 (S.D.W. Va. 1995) ("Although the parties in the instant action are seeking substantive relief in addition to declaratory judgment, the substantive claims are so closely tied to the interpretation of the insurance contract the resolution of those claims is dependant on the outcome of the declaratory judgment claims.") The Court must determine the same legal question in order to enter a declaratory judgment or to find that rescission is appropriate– whether the Policy and subsequent Policy Increase were obtained based on knowing misrepresentations made by Patterson on behalf of TRG/ROA.

The broad discretion to dismiss or stay a declaratory judgment action is unaffected by the fact that an insurer also seeks to rescind on the same facts. Moreover, the mere existence of counterclaims does not diminish this discretion. See e.g. Hinkel Excavation & Constr., Inc. v. Constr. Equip. Int'l Ltd., No. C00-4090, 2000 WL 33915812, at *3 (N.D. Iowa Nov. 20, 2000) (applying Brillhart factors to insurance coverage dispute where Defendant raised counterclaims for declaratory judgment, rescission and reformation). Accordingly, a discretionary analysis is properly considered in this case.

**B. Application of the Nautilus Factors**

The Court's decision in this matter turns primarily on the third Nautilus factor, the risk of entanglement. Plaintiff claims that permitting this action to go forward will not result in unnecessary

entanglement between the federal and state court systems because it involves discrete issues of fact and law not presented in any other action. See Myles, 233 F.3d at 825 (finding that the threat of entanglement did not exist where no pending state court action involved same issues). Plaintiff asserts that the central issue in this case is whether a directors and officers liability policy issued by Plaintiff to TRG/ROA is, in whole or part, void *ab initio* due to knowingly false misrepresentations on the insured's January 4, 2000, and April 2, 2001, applications for coverage; and 2) if the policy is not void *ab initio*, to what extent might it afford coverage for the underlying lawsuits.

Plaintiff asserts that the Alabama actions and the MDL Actions involve whether the former officers and directors, beginning in 1991, engaged in a scheme to defraud state insurance regulators, insurance rating services, and policyholders into believing that ROA and its insurance company affiliates were financially robust when, in fact, they were not. Accordingly, Plaintiff submits that the coverage issue can be decided without making any findings on the core facts alleged in the underlying actions. See e.g. Penn-America, 316 U.S. at 414 (reversing district court's decision to decline to exercise jurisdiction over a declaratory judgment action because district court could decide coverage issues without making factual findings involved in underlying state tort action).

The heart of Plaintiff's claims revolve around two separate transactions. The first transaction deals with the Proposal Form signed by Patterson (including the interim statement, and the financial statements for the previous three years) which Plaintiff received on January 4, 2000. The second transaction relates to the $10 million Policy Increase TRG/ROA received based on the Increased Limits Proposal Form and attached financial information received by Plaintiff on April 2, 2001.

With regards to the January 4, 2000, transaction, Plaintiff insists that it does not intend to establish its right to rescission by proving it relied on the numbers in the various financial statements

submitted with the Proposal Form which allegedly misstated ROA's financial condition. Plaintiff claims that it intends to prove its case by showing that Patterson knew the financial statements submitted to Plaintiff lacked integrity, as evidenced by the facts admitted in the statement of facts submitted with his guilty plea ("Statement of Facts"). Plaintiff asserts that these facts include fraudulent reductions of loss estimates and reserves to meet targeted amounts of capital surplus they entered on financial statements (hereinafter "reserve write-downs"). See Compl. Ex. G, ¶¶ 11-13.

Specifically, Plaintiff states that unlike the claims in the underlying actions, proof that Patterson knowingly participated in such fraudulent practice "beginning in or about 1995, " as admitted in paragraph 12 of his Statement of Facts, would be sufficient to establish its rescission claim.[7] Plaintiff states that it would not have to establish the precise impact of those reserve write-downs or that they actually caused ROA to fail.

With respect to the April 2, 2001, transaction, Plaintiff claims that it relied on the representations made on the Increased Limits Proposal Form, not the attached financial reports, before granting the $10 million increase of liability. See Increased Limits Proposal Form ("It is further agreed by the COMPANY and the DIRECTORS and OFFICERS that the statements in the Proposal Form or in any material submitted therewith are their representations, that they are material

---

[7]Paragraph 12 of Patterson's Statement of Facts states:

Beginning in or about 1995, the management of ROA and its related companies conducted meetings with members of the claims department to review the loss estimates and reserves set by claims department on particular cases. This review of actual cases typically resulted in the reduction of the reserves. The management of ROA and its related companies also instituted a practice that limited the amount of reserves a claims adjuster could assign a particular case, a practice which had the tendency to suppress the loss estimates and reserves.

See Compl., Ex. G, ¶ 12.

and that this Policy is issued in reliance upon the truth of such representations.") Plaintiff asserts that Patterson's Statement of Facts may be all that is needed to show the falsity of his answer to question 7 on the Increased Limits Proposal Form. See e.g. First Nat'l Bank Holding Co. v. Fid. & Deposit Co. of Md., 885 F. Supp. 1533, 1536-37 (N.D. Fla. 1995) (granting directors and officers liability insurer rescission because the insured bank's president and chairman of the board, who later pled guilty to conspiracy to commit bank fraud, had failed to answer truthfully a question on the insurance application inquiring as to whether any director or officer had knowledge of any act, error or omission which might give rise to a claim under the proposed policy). Specifically, Plaintiff submits that Patterson admitted in the Statement of Facts to having known in March 2001 that ROA's characterization of a $10 million transfer as a "prepayment" was incorrect, and to committing an overt act in furtherance of the conspiracy on April 2, 2001. See Compl., Ex G., ¶¶ 17, 19(2).

Contrary to Plaintiff's characterization of its case, its claim for rescission presents one of those rare instances where all the things Plaintiff would have to prove to support its claim will lead to unnecessary entanglement with the underlying actions due to overlapping factual issues. Plaintiff's assertion that it will establish its right to rescission by proving that Patterson knew the financial statements submitted to Plaintiff lacked integrity and that Patterson made false statements on the Increased Limits Proposal Form is implausible.[8] While Patterson's Statement of Facts may provide

---

[8]The Court notes that Plaintiff's assertion is contradicted by its own Complaint. See e.g. Compl. ¶ 79 ("Great American relied upon the representations contained in the Application Statement, the Proposal Form and financial statements, including those [financial statements] specifically required by the Proposal Forms."); Compl. ¶ 49 ("Great American issued the Policy in reliance upon... the accuracy and integrity of the Policy Proposal Form completed by TRG and financial statements signed by TRG/ROA's directors and officers and filed with the Virginia Commissioner of Insurance.").

a basis for Plaintiff's claim, Plaintiff will inevitably have to litigate the validity of the financial statements submitted with the Proposal Form and the Increased Limits Proposal Form in order to prove rescission of the entire Policy and the Policy Increase or a declaration of no coverage.

If the Court were to proceed with this action, it would result in unnecessary confusion and conflict in the underlying cases given the complexity of the cases and the number of parties involved. The insureds may be estopped from re-litigating the overlapping issues in the state court action which could frustrate the orderly progress of the state court proceedings. Mitcheson, 955 F.2d at 239. "Such entanglement is particularly dangerous when overlapping issues of fact or law between the state and federal actions cause certain issues to be precluded once they are addressed by a federal court....Simply stated, federal courts are reluctant to entangle themselves with declaratory judgment actions that will create more conflict than they will remedy." See Fid. & Guar. Ins. Underwriters, Inc. v. Holt, 2 F. Supp.2d 798, 802 (E.D. Va. 1998).

The second Nautilus factor requires the Court to determine whether the action can be more efficiently resolved in the underlying actions. This factor requires careful inquiry into "the scope of the pending state court proceedings," including such matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Nautilus Ins. Co., 15 F.3d at 378-79 (quoting Brillhart, 316 U.S. at 495). As stated above, this case has related actions pending in the Alabama State courts and in the Federal District Court of Tennessee. Given the number of parties, documents, years covered by the dispute, and complexity of the case, "to allow separate suits stemming from the same overall controversy and involving overlapping issues would require the marshaling of tremendous judicial resources" and

would likely result in inefficiencies. Holt, 2 F. Supp.2d at 801.

Moreover, exercising jurisdiction over this suit would constitute improper piecemeal adjudication because nearly all of the claimants, together with certain issues, in the underlying cases are omitted. See Quarles, 92 F.2d at 325 (4th Cir. 1937) (Declaratory actions should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy."). Because most of the plaintiff's in the underlying lawsuit are not named in the instant action, many of the defendants in this action will be subjected to liability in two forums with the risk of inconsistent results. See e.g. Wells Dairy, Inc. v. Travelers Indem. Co., 241 F. Supp.2d 945, 976-77 (N.D. Iowa 2003) (noting that prejudice will occur to the insured from current litigation of a declaratory judgment action and third party action, having to fight a two-front litigation battle, and collateral estoppel issues). Specifically, if the Court finds that fraudulent misrepresentations were made on the financial statements at issue in this case, the defendant directors and officers in this action would be bound by that finding in the underlying actions, but the plaintiffs in the underlying actions would not be bound by the Court's decision if the defendant directors and officers prevailed in this action. The fact that not all necessary parties are joined to this action and some parties in this action would be bound by the result impacts the fairness of going forward at this time.

Nautilus factors one and four are not very pertinent to the Court decision. However, other equitable principles support the Court's decision to decline to exercise jurisdiction at this time. First, it is fundamentally unfair that Movants, as well as other defendants covered under the Policy, would be forced to litigate the complex financial issues presented in this case without the benefit of cost of defense coverage. The harm to Plaintiff in dismissing the Complaint is minimal because Plaintiff is only doing what it was contractually obligated to do– provide the costs of defense to the officers

and directors covered under the Policy. See e.g. 2 A. Windt, Insurance Claims & Disputes, § 8.04 ("Refusing the insurance company the option of seeking declaratory judgment does work to its disadvantage, but not inequitably so. Such a refusal will merely require the insurer to comply with its contractual obligation until the lawsuit against its insured is terminated."). Second, given the unique posture of the case, Movants' opponents in the underlying case, Gross and Flowers, will be privy to Defendant's discovery before proceeding in the underlying case. Accordingly, Movants Motion to Dismiss based on the Court's discretionary authority to dismiss or stay declaratory judgment actions is GRANTED.

Movants further argue that Plaintiff's Complaint should be dismissed for failure to join necessary and indispensable parties pursuant to Federal Rule of Civil Procedure 19(b). The Court declines to reach this issue since dismissal is proper under its discretionary authority to decline jurisdiction in declaratory judgment actions.

### III. PLAINTIFF'S OBJECTION TO MOTION OF PATTERSON, HUDGINS & WAGES

Plaintiff's object to Patterson's, Hudgins' and Wages' adoption of Movants' motion based on Federal Rule of Civil Procedure 12(b) which mandates that a motion making a defense under the Rule 12(b)(7) "shall be made before pleadings if a further pleading is permitted." Plaintiff asserts that Patterson, Hudgins, and Wages submitted their answers prior to their adoption of Movants' motion to dismiss. Plaintiff argues that these post-answer motions should be deemed untimely and should not be considered. See Philippine Airlines, Inc. v. Nat'l Mediation Board, 430 F. Supp. 426, 427 n.1 (N.D. Cal. 1977) (explaining that Federal Rule of Civil Procedure 12(b) "motions must be made before filing of an answer.")

Plaintiff is correct that these defendants have failed to raise their claim in the proper order

required by the Rules of Civil Procedure. However, their joinder or non-joinder to Movants' motion to dismiss does not change the effect that a decision based on Movants' motion will have on them. A dismissal or stay of this action will dismiss or stay the Complaint as to all the defendants. Accordingly, Plaintiff's objection is OVERRULED.

### IV. THOMAS SMITH'S 12(B)(6) MOTION

Smith argues that Plaintiff's Complaint should be dismissed as to him because it fails to plead against him with particularity and because equitable principles merit dismissal. Since the Court has decided to abstain from exercising jurisdiction in this case, Smith's Motion is DISMISSED AS MOOT.

### V. CONCLUSION

For the reasons discussed above, the Court declines to exercise jurisdiction over this action due to the risk of entanglement with the underlying actions, resulting inefficiencies, and fairness concerns. Accordingly, Movants motion to dismiss is GRANTED; Plaintiff's objection to the motions of Patterson, Hudgins and Wages is OVERRULED; and Smith's motion to dismiss under Rule 12(b)(6) is DISMISSED AS MOOT. Plaintiff's Complaint is hereby DISMISSED WITHOUT PREJUDICE.

An appropriate Order shall issue.

    /s/ James R. Spencer  
JAMES R. SPENCER  
UNITED STATES DISTRICT JUDGE

 August 19, 2005  
DATE