**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GREAT AMERICAN INSURANCE
COMPANY,

       *Plaintiff*,

v.                                               Civil Action No. 3:05CV159

ALFRED W. GROSS, *et al.*,

       *Defendants.*

## MEMORANDUM OPINION and REPORT AND RECOMMENDATION

This matter comes before the Court on nine discovery motions that were referred to the undersigned magistrate judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B) by the Honorable James R. Spencer. Upon review of the record and oral argument, the motions are GRANTED in part and DENIED in part, and as to one issue a Report and Recommendation follows.

### I. Background

In January 2000, Plaintiff Great American Insurance Company ("Great American" or "GAIC") issued a directors' and officers' liability policy of $10 million to Reciprocal of America ("ROA") and The Reciprocal Group ("TRG"). ROA was a reciprocal insurer and reinsurer, while TRG was the management company and attorney-in-fact for ROA. In May 2001, Great American granted TRG/ROA's request to increase the limit of liability to $20 million. This increase was based upon TRG/ROA submitting certain documentation and answering certain questions. One pertinent question, Question 7, asked whether "the undersigned . . . .

1

[was] aware of any . . . situation . . . [that] might result in any future Claim which would fall within the scope of the increased Limit of Liability."  Kenneth R. Patterson, then President and CEO of TRG/ROA, answered this question in the negative.

In 2003, ROA/TRG suffered financial collapse.  In February 2005, Kenneth Patterson and Carolyn B. Hudgins, another former officer of ROA and TRG, pled guilty to insurance fraud stemming from actions taken during the scope of their employment.

In March 2005, GAIC brought suit in the United States District Court for the Eastern District of Virginia against numerous officers and directors of TRG/ROA.   Great American raised four claims:  (1) rescission of the directors' and officers' liability policy as to all defendants; (2) declaration of no coverage as to some defendants and return of defense costs; (3) declaration of no coverage under the fraud exclusion as to Patterson; and, (4) declaration of no coverage under the fraud exclusion as to Hudgins.  The original complaint encompassed both the $10 million primary and $10 million excess layers of TRG/ROA's Directors and Officers ("D&O") insurance coverage.  Specifically, GAIC alleged that based on Patterson's false answer to Question 7  "and the financial and other information submitted in and with the Increased Limits Proposal Form," GAIC doubled from $10 to $20 million the limits in the D&O insurance in 2001.  (Compl. ¶ 54) (Docket No. 1) ("*GAIC I*.")

At the time of that suit, a variety of other legal actions arising from factual circumstances surrounding the ROA collapse was pending in other courts.  Multi-district litigation ("MDL Actions") existed in the Western District of Tennessee, in which Alfred W. Gross and Paula A.

2

Flowers,[1] as well as former policyholders of ROA and Risk Retention Groups, and five healthcare related insurance businesses sued a variety of defendants, including the General Reinsurance Corporation, Milliman USA, Inc., PriceWaterhouseCoopers, LLP, and Wachovia Bank.  *See In Re Reciprocal of America (ROA)*, MDL-1551 (W.D. Tenn.).  Great American was not a party to these suits.  The Panel on Multi-District Litigation denied joinder of the instant suit with those consolidated MDL actions.

Additionally, three suits in Alabama state courts arose from related factual circumstances of the instant case.  GAIC also was not a party to any of the Alabama state court actions.  Great American, however, is paying defense costs as to both the MDL and the Alabama actions.  *See Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2005 WL 1048752 (E.D. Va. May 3, 2005) (granting Patterson and Hudgins's preliminary injunction and requiring Great American to advance costs of defense.)

Initially, on August 19, 2005, the Honorable James R. Spencer granted the Motion to Dismiss of Defendants John Crews, Judith Kelley, and Gordon McLean, without prejudice.  *Great Am. Ins. Co. v. Gross*, No. 3:05cv159, 2005 WL 2009284 (E.D. Va. Aug. 19, 2005) ("*GAIC I*").  Applying the test articulated in *Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 377 (4th Cir. 1994), because the substantive claims so closely related to the declaratory judgment claims, the District Court ruled that the *Nautilus* third prong, a concern for

---

[1] Gross, the Commissioner of Insurance for Virginia and the Deputy Receiver for TRG/ROA, is a defendant in the instant suit.  Flowers, the Commissioner of Commerce and Insurance for Tennessee, previously was a defendant in the instant suit but has since been substituted out as a party.  (Docket No. 120.)

"unnecessary entanglement" between the state and federal systems, suggested dismissal. *Id.* at

*5-6. The District Court ruled that:

> Plaintiff asserts that Patterson's Statement of Facts may be all that is needed to
> show the falsity of his answer to question 7 on the Increased Limits Proposal
> Form. . . . Plaintiff will inevitably have to litigate the validity of the financial
> statements submitted with the Proposal Form and the Increased Limits Proposal
> Form in order to prove rescission of the entire Policy and the Policy Increase or a
> declaration of no coverage.

*Id.* at *6 (internal citations omitted). The District Court abstained from considering the GAIC's

declaratory claims and, due to the close tie between the substantive and declaratory judgment

claims, the Court followed its discretionary authority to dismiss the action. *Id.* at *4, 7.

In a decision discussed more fully below, the United States Court of Appeals for the

Fourth Circuit vacated and remanded this judgment on October 30, 2006. *Great Am. Ins. Co. v.*

*Gross*, 468 F.3d 199 (4th Cir. 2006).

On January 9, 2007, Plaintiff GAIC filed an Amended Complaint, alleging solely a claim

for rescission of the increased Limit of Liability. (Am. Compl.) (Docket No. 101) ("*GAIC II.*")

In its narrowed form, the Amended Complaint no longer addressed the primary layer of

insurance, nor, with respect to the $10 million excess layer, did it specifically reference "the

financial and other information submitted in and with the Increased Limits Proposal Form" that

the original Complaint alleged as to Patterson's false answer to Question 7 in 2001. *See* Compl.

¶ 54. While detailing aspects of Patterson's and Hudgins's pleas in which they admit making

false statements in connection with financial reports, *see* Am. Compl. ¶ 35, GAIC now only

4

seeks rescission of the increase of limits to $20 million[2] based on Patterson's statements in the Increased Limits Proposal Form, particularly his answer to Question 7 (without specifically including financial statements).  (Am. Compl. ¶¶ 43, 45.)    GAIC specifically complains about one improper financial transaction occurring between December 2000 and the Spring of 2001: the $10 million transfer of ROA surplus capital to a reinsurer while attempting to have it falsely characterized as a prepaid expense.  (Am. Compl. ¶ 36) ("$10 million transfer.")

 Trial is scheduled to commence July 9, 2007, and discovery closes on May 29, 2007. Since April 20, 2007, the parties have filed a series of discovery motions.  Although many parties remain in the case, discovery disputes exist among three sets of parties: Plaintiff GAIC, Defendant Gross, and Individual Defendants Crews, Kelley,[3] and McLean ("CKM") who are represented jointly.

## II.  Discovery Motions Before the Court

The parties place before the Court a staggering record of cross accusations as to improper discovery tactics and methods.  It seems the parties cannot agree that water is wet or that the sky is blue.  Although some may argue that ice is hard and clouds are grey, the Court will attempt a straightforward analysis as to what appears to be an unduly complex record.

---

[2] During oral argument for these discovery motions, counsel for GAIC indicated the second action pertains only to the excess layer of insurance because it appears the costs of defense have already eroded the first $10 million layer.

[3] GAIC and CKM have agreed that discovery would commence solely against defendant McLean due to ongoing criminal investigations as to defendants Crews and Kelley.

Because one motion has been withdrawn,[4] seven motions remain before the Court pursuant to 28 U.S.C. § 636(b)(1)(A):

A.   GAIC's Motion to Compel Defendants Patterson and Hudgins (Docket No. 151);

B.    Defendants CKM's Motion for Judicial Estoppel (Docket No. 140);

C.   GAIC's Motion to Compel Discovery From Defendants Gross and McLean (Docket No. 138);

D.   Defendant Gross's [First] Motion for a Protective Order (Docket No. 146);

E.   GAIC's Emergency Motion to Strike Supplemental Disclosures of Defendants CKM (Docket No. 165);

F.   Defendants CKM's Motion for Protective Order with Regard to Plaintiff's Rule 45 Subpoena (Docket No. 173); and,

G.   Defendant Gross's Second Motion for Protective Order (Docket No. 176).

The Court must address one motion pursuant to 28 U.S.C. § 636(b)(1)(B).  CKM seek a stay of discovery until coordination can occur with the MDL litigation.   However, because CKM simultaneously argue that Great American's discovery unduly overlaps with the MDL and should be estopped, this motion could seek a stay of the entire proceedings before the District Court. Given that the stay could encompass the girth of the entire case before the District Court, the Magistrate Judge will address the following motion by Report and Recommendation:

H.   Defendants CKM's Motion to Stay Proceedings Pending Coordination of Discovery Matters with the MDL Litigation (Docket No. 174).

The Court will address these issues seriatim.

---

[4] Individual defendants CKM have withdrawn their Motion to Quash Rule 30(b)(6) Deposition of General Reinsurance Corporation.  (Docket No. 173).  The Motion to Withdraw was granted during oral argument on May 22, 2007.  CKM's motion for Protective Order (Docket No. 173) essentially supplants their previous Motion to Quash.

### A.   GAIC's Motion to Compel Discovery from Defendants Patterson and Hudgins

In a motion unrelated to issues raised in the other discovery matters before the Court, Plaintiff Great American seeks to compel discovery from Defendants Patterson and Hudgins, claiming that they have failed to present adequate justification in invoking their Fifth Amendment rights against self incrimination.[5]  (Docket No. 151.)  In April 2007, Plaintiff deposed incarcerated Defendants Patterson and Hudgins.  Throughout the depositions, Defendants Patterson and Hudgins invoked their Fifth Amendment rights in response to fourteen and thirteen questions, respectively, regarding, *inter alia*, the $10 million transfer.  (Pl.'s Mem. Supp. Mot. Compel Defs. Patterson & Hudgins 4-6.)  Plaintiff contends that Defendants have not adequately borne their burden of justifying this privilege.  (*Id.* at 8.)

A court cannot compel a party in a civil action "to answer deposition questions over a valid assertion of his [or her] Fifth Amendment right, absent a duly authorized assurance of immunity at the time."  *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983).  Here, Defendants Patterson and Hudgins present two reasons for asserting their Fifth Amendment rights.  First, their Plea Agreements only immunize them from further criminal prosecution for specific conduct described in the criminal informations or statements of facts.  (Defs.' Mem. Opp. Pl.'s Mot. Compel Defs. Patterson & Hudgins, Ex. A, Patterson Plea ¶ 10; Hudgins Plea ¶ 11.)  Any criminal conduct not defined in these documents, therefore, may be prosecuted.  Second, their Plea Agreements pertain to immunity from further prosecution only in the Eastern District of

---

[5] "No person . . .  shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V.

7

Virginia.  Certainly Defendants Patterson and Hudgins could be prosecuted in other jurisdictions.

In fact, Plaintiff concedes that these two justifications exist.  (Pl.'s Mot. Compel Defs. Patterson

& Hudgins 8.)

The Court notes that in two or three instances, Patterson and Hudgins seem to have

broadly interpreted the Fifth Amendment's application.  Nevertheless, given the consequence of

failing to properly invoke, and because the threat of future prosecution is "substantial and 'real,'

and not merely trifling or imaginary," *Marchetti v. United States*, 390 U.S. 39, 53 (1968)(citation

omitted), the Court finds that Defendants Patterson and Hudgins have adequately proved their

burden to justify the privilege asserted.

Plaintiff's Motion to Compel Discovery from Defendants Patterson and Hudgins (Docket

No. 151) is DENIED.

### B.      Individual Defendants CKM's Motion for Judicial Estoppel

Despite the myriad remaining motions pending, a single theme prevails.  CKM and Gross

claim persistent and severe prejudice because, they say, GAIC has drastically changed the course

of litigation near the end of discovery.  Defendants CKM and Gross seek to preclude, via judicial

estoppel, Plaintiff GAIC from raising certain claims or seeking certain discovery.  CKM contend

that Great American "clearly and emphatically made factual assertions [on appeal] . . . regarding

the limited nature and scope of the proof it intended to offer" to establish the elements of

rescission.  (Defs. CKM's Mem. Supp. Mot. Judicial Estoppel 14-15.)  CKM charge that GAIC

told the United States Court of Appeals for the Fourth Circuit that it did not intend to provide the

"wrongful acts" alleged in the MDL actions or Alabama lawsuits. *Id.* For instance, they note that Great American argued in its appellate brief:

> To make its rescission claim as to the Increased Limit, Great American will not attempt to prove - *because it doesn't have to* - the vast array of facts alleged in the underlying actions. Rather, Great American intends to introduce Patterson's guilty plea to prove that at the same time he applied for the $10 million increase in coverage, he was actively engaged in a conspiracy to, among other things, conceal from regulators the truth regarding a $10 million transaction. As its counsel explained to the District Court at oral argument, Great American needs and intends to do little more than lay Patterson's plea agreement side-by-side with the Increased Limit Proposal Form because the plea agreement goes a very long way toward establishing that Patterson's answer to Question 7 was a lie--and a material one at that.

(Def. Gross' Mem. Supp. 1st Mot. Protective Order, Ex. 2 at 33) (emphasis in original).

Now, on remand to the District Court, Great American has sought discovery from defendants regarding reinsurance agreements, contracts, and a "2000 Unreported Side Agreement." *See, e.g.,* Pl.'s Mem. Supp. Mot. Compel Gross & McLean, Ex. A. Great American argues that this discovery "will aid Great American in illustrating the type and seriousness of the misconduct Patterson was engaging in at the time he completed and submitted the Increased Limits Proposal Form." (Pl.'s Mem. Supp. Mot. Compel Gross & McLean 5.) Defendants CKM and Gross assert judicial estoppel bars this posture and related discovery because Great American repeatedly alleged a narrow scope of the case and necessary proof in order to gain a reversal in the Fourth Circuit of the District Court's abstention decision.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Zedner v. United States*, 547 U.S. ___, 126 S. Ct. 1976, 1987 (2006) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). The purpose of the doctrine is to avoid "inconsistent"

or "mutually contradictory" positions within the course of a lawsuit. *Symeonidis v. Eagle Const. of Va.*, 3:05cv589, 2005 WL 3054043, *6 (E.D. Va. Nov. 15, 2005) (Spencer, J.)(internal citations omitted).  More colloquially, the Fourth Circuit has noted that judicial estoppel prevents parties from "blowing hot and cold as the occasion demands" or seeking "to have [their] cake and eat it too." *Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996) (internal citations omitted).

As a judicially made, equitable doctrine, judicial estoppel has been applied in "wildly different ways" by various courts. *Lamonds v. General Motors Corp.*, 34 F. Supp. 2d 391, 393 (W.D. Va. 1999).  Still, three elements consistently have been applied by courts of the Fourth Circuit: (1) the party to be estopped must assert a position inconsistent with that taken in prior litigation; (2) the prior inconsistent position must have been accepted by the court; and (3) the party to be estopped must intentionally have misled the court to gain unfair advantage. *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007); *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998); *Lowery*, 92 F.3d at 224.  Nearly all courts recognize that judicial estoppel must be applied with caution. *See, e.g., Lowery*, 92 F.3d at 224.

In the present case, this Court finds that without specifically reviewing the first and third prongs, that the second factor renders judicial estoppel inappropriate.  "Judicial acceptance means only that the first court has adopted the position urged by the party . . . as part of a final disposition." *Lowery*, 92 F.3d at 224-25 (internal citations omitted).   Any representations that Great American may have made about the guilty plea or need for discovery from other cases appear immaterial to the holding of the Fourth Circuit.  That is, the Fourth Circuit failed to

10

accept or adopt GAIC's statements defining scope of position or proof.  *But cf. id.* (finding that court's taking of civil plaintiff's guilty plea was an acceptance of his position).

Defendants read broadly the Fourth Circuit's opinion to imply acceptance of GAIC's representations in briefs and oral argument that any discovery in the coverage case would be limited and, essentially, involve only the proffer of the Patterson and Hudgins guilty pleas. (Defs. CKM's Mem. Supp. Mot. Judicial Estoppel 6-7; Def. Gross's Mem. Supp. 1st Mot. Protective Order 14.)  As discussed below, however, the Court of Appeals rested its opinion on other grounds.

At the outset, the Fourth Circuit addressed the District Court's decision to abstain from nondeclaratory claims.  *Great Am. Ins. Co.*, 468 F.3d at 205.  When noting that this action is not duplicative to the MDL litigation, the Court cited to the MDL Judicial Panel's apparent decision not to join this case to the MDL litigation,[6] later noting that, under the *Colorado River* abstention test, the proceedings were not parallel.  *Id.* at 207 n.6; *Colorado River Water Conservation Dist.*

---

[6] Defendant Gross contends that GAIC took its inconsistent position before the Judicial Panel on Multidistrict Litigation, and the Fourth Circuit adopted the finding of the Judicial Panel. (Def. Gross's Reply Mem. Supp.1st Mot. Protective Order 10).  Gross notes that defendants sought transfer of the *GAIC I* to the MDL pursuant to 28 U.S.C. 1407(a).

Gross contends that GAIC stated that *no* factual overlap existed, and that denial of transfer flowed.  Moreover, Gross contends that the Fourth Circuit "duly noted" the Panel's "implicit conclusion" that the federal court suit and the underlying actions "were not related (*i.e.*, did not share 'one or more common issues of fact'). . ." (*Id.* at 13.)

Gross overstates the scope of that statute, and his argument is not otherwise supported by the record.   The statute *permits* joinder of a claim when common facts exist; it does not require it: "When civil actions involving one or more common questions of fact are pending in different districts, such actions *may be* transferred to any district for coordinated or consolidated pretrial proceedings."  28 U.S.C. 1407(a) (emphasis supplied).  The statute requires a transfer upon a finding of convenience for the parties and witnesses, and for judicial economy and fairness.  *Id.* Because transfer is not mandatory, a refusal to transfer does not mean the Panel found the actions lacked one or more common issues of fact.  As such, the Fourth Circuit could not have adopted such a position.

*v. United States*, 424 U.S. 800, 817 (1976). The Fourth Circuit did not mention any of GAIC's

representations as to the issues of proof compared to those in the MDL action. Indeed, the

Fourth Circuit's later analysis belies any specific reliance on the means of proof offered by

GAIC.

When considering the Alabama state court claims, which the parties "seem to concede"

involved analogous liability issues to those in the MDL action, *Great Am. Ins. Co.*, 468 F.3d at

207 n.6, the Fourth Circuit noted that abstention is only proper when "parallel state-court

litigation will be an adequate vehicle for the complete and prompt resolution of the issues

between the parties." *Id.* at 208 (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 28 (1983)). In making its determination that the present case was not a "parallel

state-court" proceeding with Alabama, the Court highlighted three differences.

First, the Circuit Court found the litigated issues and parties to be dissimilar:

Whether Patterson lied when he completed the Proposal Forms, whether Great
American's underwriter relied on his lies, and whether they were material to the
risk Great American undertook when it issued the Policy and, later, doubled its
liability limit, are questions of fact and law that will not be resolved in any other
action.

*Id.* at 208. Second, the Court noted that the remedies sought by Great American and the

plaintiffs in the Alabama suits are "entirely different." *Id.* The Fourth Circuit noted that the

Alabama cases do not pertain to insurance remedies, as the present case does. *Id.* Third, the

Court raised concern that "there is no guarantee" that the Alabama state court actions will litigate

facts necessary for Great American to prove its claim here for the nondeclaratory claims. *Id.*

The Circuit Court noted that although the Alabama plaintiffs may attempt to prove that the

information provided by Patterson relied upon by Great American was fraudulent, it was no

12

certainty the underlying cases would reach that fact.  *Id.*  Because of these differences between the present action and the Alabama cases, the Fourth Circuit reversed the District Court's decision to abstain from considering Great American's nondeclaratory claims.[7]  *Id.* at 208-09.

In short, the Fourth Circuit's opinion centered on the issues litigated and remedies sought in other court cases, not the manner in which Great American might factually prove its coverage action here.  CKM and Gross claim otherwise because of the sheer number of instances when GAIC promised streamlined litigation.  During argument before this Court on the discovery motions, CKM cited with outrage "seventeen" instances in which GAIC misled the Court by promising not to litigate underlying facts so as to convince the court to retain jurisdiction for the coverage action. *See, e.g.*, Defs. CKM's Mem. Supp. Protective Order 7-9, Exs. A-M.  CKM and Gross correctly identify GAIC's emphasis on streamlining, efficiency, and its position that Patterson's plea would constitute the bulk of the case.  Moreover, CKM generally quote correctly GAIC's own words.

---

[7]  Despite its finding that the Alabama cases were not "parallel state-court litigation," the Fourth Circuit continued to address the relevant six factors from *Colorado River*, 468 F.3d at 209, finding that no "exceptional circumstances" warranted abstention.

Moreover, despite resting its decision on other grounds, the Fourth Circuit also considered the District Court's abstention from the declaratory judgment claim.  Applying the four-factor test from *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994), originally relied upon by the District Court, the Fourth Circuit noted that this present case failed each prong.  First, the Fourth Circuit noted that the case will be governed by substantive Virginia law, so no compelling reason exists for these matters to be considered by Alabama courts.  *Id.* at 211.  Second, the Fourth Circuit noted that the case would not be more efficiently resolved in Alabama because insurance coverage issues are not raised in the pending Alabama cases.  *Id.* Third, the Fourth Circuit found the issues of law and fact in the two lawsuits sufficiently unrelated that no unnecessary entanglement would occur between federal and state court systems because coverage was not being litigated in the state court.  *Id.* at 212.  Fourth and finally, the Court felt satisfied that the federal action was not being used merely as a device for procedural fencing. *Id.*  Thus, the Fourth Circuit found separately under the so-called *Nautilus* test that the District Court should not have abstained from Great American's declaratory claim.  *Id.*

Nonetheless, CKM and Gross overstate their position.  First, emphasizing its unfairness but not its lack of necessity,[8] CKM highlight the "entanglement" into the underlying actions the discovery sought by GAIC necessitates.  CKM and Gross ignore the qualifying language employed by GAIC when making those assertions.  GAIC, on the other hand, highlights its qualifying language, and cites to an isolated instance in which it noted to the District Court (and appended in the large record to the Fourth Circuit) that counsel for CKM was under a misapprehension that "somehow Great American is limited to taking Mr. Patterson's Plea Agreement, entering it into evidence, and resting."  (Pl.'s Mem. Opp. To Mot. for Judicial Estoppel, n.1, Ex. A.)

As stated above, decisive to this issue is that the Fourth Circuit itself never mentioned a claim by GAIC that it would severely limit its proof, or rely only upon Patterson's guilty plea as proof in the District Court.  Despite Defendants' repeated protestations to the contrary, the Fourth Circuit did not speak of the *absence* of overlap.  Instead, the Court acknowledged that factual overlap existed when addressing that specific facts necessary to the coverage case might not be addressed in the vast litigation of the underlying cases:

> While it is conceivable that the plaintiffs [in the underlying actions] will attempt to prove that the information allegedly relied upon by Great American was fraudulent, it does not necessarily follow that the plaintiffs are required to do so to prevail. . . . It may well be that the plaintiffs in the [underlying actions] will rely

---

[8] Indeed, CKM suggests discovery is necessary to GAIC's complaint, but asserts that GAIC underestimated what it needed, and should be held to its original estimate: "[The Amended Complaint is] consistent with the corner Great American has boxed itself into, is utterly deficient to support the necessary proof to permit a rescission claim; and, recognizing this, Great American has now proceeded to undertake discovery and frame out the presentation of its case as if it had made no representations" as to the scope of discovery.  (Defs. CKM's Mem. Supp. Mot. Judicial Estoppel 7-8.)

> on other fraudulent conduct, unrelated to the facts necessary for Great American
> to prove its case.

*Great Am. Ins. Co.*, 468 F.3d at 208. The Fourth Circuit, recognizing that coverage issues were

not addressed in the underlying actions found that this and the state proceedings rested on

"entirely separate and independent questions of *liability*," not fact. *Id.* at 212 (emphasis added).

While the Fourth Circuit does discuss that GAIC's suit covers a "more discrete period of time"

than the Alabama cases, 468 F.3d at 208, the decision simply does not preclude discovery into

*any* fact that may overlap during this more discrete period of time.

Defendants do not demonstrate that the Court of Appeals accepted or adopted a promise

by GAIC that it would limit its proof as to Question 7 largely to Patterson's plea agreement, nor

can any such evidence be found within the text of the Court's opinion.  Defendants CKM's

Motion for Judicial Estoppel (Docket No. 140) is DENIED.

### 1.      Resulting Scope of Permissible Discovery

Having found no basis in judicial estoppel to limit discovery to the extent sought by

defendants, the Court nevertheless must examine the remaining discovery motions carefully.  In a

different case, this Court might express little concern about permitting Great American discovery

into a variety of matters.  Common sense suggests that potentially similar lies during a close time

frame could be relevant and at least lead to the discovery of admissible evidence.  *See* Fed. R.

Civ. P. 26(b)(1).  However, common sense also suggests that even "narrow" discovery into the

facts underlying the MDL action discussed here could be voluminous, and potentially oppressive

or burdensome.  *See* Fed. R. Civ. P. 26(c)(4).  All moving parties agree that discovery in the

underlying cases involves millions of documents, most of which are captured in a database.  The

MDL complaint in Tennessee spans 148 pages and involves at least 25 parties.  The allegations

of facts and wrongs extend over 556 paragraphs.

During *GAIC I*, Great American repeatedly told the District Court, the Circuit Court, and

all Defendants it sought only a limited scope of evidence when proving this coverage action.  On

remand, GAIC amended its Complaint to narrow profoundly the scope of litigation, specifically

eliminating references to financial statements when discussing Patterson's false answer to

Question 7.  (Am. Compl. ¶ 43.)   During oral argument on these discovery motions, counsel for

GAIC asserted that Great American had never promised it would offer *only* the plea agreement in

support of its claims.  Counsel wavered, however, in trying to respond to what the "gist" of their

assertions as to discovery were; *i.e.*, whether or not the District and Circuit Courts likely thought

discovery would go far beyond the plea.

On the inverse side of the coin, during argument, counsel for CKM could not articulate

*any* discovery beyond the plea they deemed permissible because of what they termed were

GAIC's limiting assertions in the past.  While asserting they need not do so because that would

only aid GAIC's case, counsel's reluctance to articulate any permissible discovery evinces a line

drawn too narrowly given the Fourth Circuit's decision here.

For the reasons discussed and with the qualifications articulated below, this Court shall

allow limited discovery into the facts of the $10 million transfer as it relates to the underlying

action.  The Court finds that discovery as to a transaction specifically alleged in the Amended

Complaint cannot cause unfair surprise or prejudice.   Moreover, allegations as to the $10 million

transfer comprise approximately 14 of the 556 paragraphs in the MDL complaint, and just four of

the 148 pages alleged.  Basic mathematical precepts suggest, then, that Great American roughly

16

places at issue less than three percent of the allegations made in the MDL action with these figures in mind.

However, the Court expresses reservation as to permitting discovery given that it no longer faces a potential, but instead identifies an extant, overlap between *GAIC II* and the underlying actions.  Three percent of 1.5 million would amount to 45,000 documents, a not insignificant number when placed outside the MDL context and into this coverage case.  The District Court was prescient in finding that extensive overlap could occur.  Unfortunately, Defendants make no particularized showing as to documents pertaining to the $10 million transfer, instead relying on broad assertions as to any overlay between this coverage action and the underlying cases.  On such a record, the Court cannot limit discovery.  However, the Court places all parties on notice that, should the Court on a full record find that even limited discovery into the $10 million transfer becomes unreasonably cumulative, has been amply discovered, or involves a burden or expense that outweighs its likely benefit, the Court will limit discovery in the future.  Fed. R. Civ. P. 26(b)(2)(iii).

The Court will address the remaining discovery motions with this backdrop in place.

### C and D. GAIC's Motion to Compel Defendants Gross and McLean and Defendant Gross's First Motion for Protective Order

GAIC moves to compel Defendants McLean and Gross to respond to three Requests for Production.  (Docket No. 138.)  Requests 6, 7, and 8 seek production of all types of certain described reinsurance agreements, but not to the $10 million transfer.  For purposes of its motion, GAIC narrows the scope of these questions to request production of "six reinsurance agreements," which it termed "a handful of easily identified documents" available through a

"computerized database." (Pl.'s Mem. Supp. Mot. Compel Gross & McLean 9.) The documents, according to GAIC, pertain to Patterson's false answers about reinsurance given to Interrogatories 15A and 16A in the Virginia Insurance Reciprocal Annual Statement (for year ending December 31, 2000). Great American contends the agreements will aid in illustrating "the type and seriousness of misconduct Paterson was engaging in at the time he completed and submitted the Increased Limits Proposal Form." (*Id.* at 5.)

Conversely, Defendant Gross moves for a protective order from answering these Requests for Production. (Docket No. 146.) He also seeks protection from answering other discovery, specifically discovery seeking information about: (1) any reinsurance agreements (Interrogatory 5, Requests for Admission 40-69); (2) a "2000 Unreported Side Agreement" (Interrogatories 6-7, Request for Production 4); and, (3) a "Transfer of $10 Million" (Interrogatories 3-4, Request for Production 3). Gross contends the requests are irrelevant, cumulative and unduly burdensome. Gross asserts that Great American is judicially estopped from seeking the discovery.

GAIC states on brief and in oral argument that it simply requests "six reinsurance agreements" at this time. The procedural history of this case and the litigative realities of the underlying cases suggest that "six reinsurance agreements" understate the discovery sought.

The underlying actions involve complex discovery and legal issues, nearly all of which should not be the subject of this narrow coverage action. Counsel for CKM correctly noted during oral argument that what constitutes "the" six reinsurance agreements in a database of millions of documents could be subject to debate. And what the reinsurance agreements actually mean could be subject to expert testimony, an issue clearly not contemplated here because not

18

even Plaintiff has identified an insurance expert within the now-expired expert designation time period.

Moreover, GAIC has represented the narrow scope of the case, and, with the exception to Question 7 of the Increased Limits Proposal form pertaining to the $10 million increase, GAIC has repeatedly distinguished this dispute from issues raised in Alabama or the MDL litigation. The purportedly false statements in the Annual Statement, though near in time, do not closely enough relate to Question 7, or to the $10 million transfer specifically addressed in Great American's Amended Complaint.  Given the tangential nature to the issues complained about in this coverage action, and the likely burden of searching even a computerized database, any discovery into these reinsurance agreements would be unduly oppressive, burdensome or expensive within the confines of this coverage action.  Fed. R. Civ. P. 26(c)(4).  This is especially true since Great American already has in hand a guilty plea from Patterson as to the bulk of the improper conduct, meaning it will not suffer prejudice from this limit on the scope of discovery articulated here.  As to the $10 million transfer, the Court rejects Gross's assertion that the information lacks relevance.

Therefore, GAIC's Motion to Compel McLean and Gross to answer Requests for Production 6, 7, and 8 is DENIED.  (Docket No. 138.)  Defendant Gross's Motion for a Protective Order is GRANTED in part and DENIED in part.  (Docket No. 146.)  The Protective Order is GRANTED as to Interrogatories 5-7, Request for Production 4, and Requests for Admission 40-69.

The Protective Order is DENIED as to questions pertaining to the transfer of $10 million. Within the confines articulated below, Defendant Gross must ANSWER GAIC's Interrogatories 3-4 and Request for Production 3.

### E.     GAIC's Motion to Strike Defendants CKM's Supplemental Initial Disclosures

Great American has filed an "emergency" motion, seeking to strike the supplemental initial disclosures of CKM.  (Docket No. 165.)  GAIC claims surprise when, on May 4, 2007, CKM disclosed 43 documents not subject to protective order pertaining to the $10 million transfer after declaring it had no such documents.  CKM counters that it legitimately updated its disclosures upon discovering the expanded breadth of Great American's discovery, and did so from a database about whose existence GAIC was well informed.

On January 24, 2007, Defendants CKM filed Initial Disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.  The disclosure broadly stated, *inter alia*, that the Defendants possessed "documents produced by various other parties and third parties to the Alabama litigation. . . . Some of these documents are subject to Protective Orders. . . ."  (Pl.'s Mem. Supp. Emergency Mot. Strike, Ex. C.)  At oral argument on these discovery motions, Counsel for Great American noted confusion by the breadth of this disclosure, but confirmed an election not to file an objection.  On March 9, 2007, Great American served Requests for Production on Defendant McLean and Interrogatories on Defendant Gross.  (*Id.,* Ex. E.)  On April 9, 2007, approximately seven weeks prior to the close of discovery, McLean answered the Requests for Production during which he contends that, as a retiree, he didn't "possess" the documents because they existed in a database compiled in the underlying actions.   He states he

identified database documents in this April 9 response, documents he claims significantly overlap with the challenge raised in this Motion to Strike.  (*Id.*, Ex. F.)

On April 13, 2007, Great American wrote to CKM and requested that they supplement their initial disclosures to include which of the documents produced in the "AHAT" litigation they might rely upon.  (Defs.' Mem. Opp. Pl.'s Mem. Supp. Emergency Mot. Strike 8.)  Four days later, counsel for CKM contacted counsel for Great American to explain that the "AHAT" documents were buried in a database of "over 1.5 million" documents.  (*Id.* at 9, 14.)  On April 23, 2007, Great American filed Requests for Admission on Defendant Gross.  (Def. Gross's Mem. Supp. 1st Protective Order, Ex. 5.)

On May 4, 2007, CKM filed Supplemental Initial Disclosures, in which they disclosed approximately 43 specific documents from the database.  (Pl.'s Mem. Supp. Emergency Mot. Strike, Ex. I.)  On May 7, 2007, Great American asked for copies of these documents.  (Defs. CKM's Mem. Opp. Pl.'s Mem. Supp. Emergency Mot. Strike 8.)   Ten days later, on May 17, 2007, Great American moved to strike the Supplemental Initial Disclosures of Defendants Crews, Kelley, and McLean.  (Docket No. 165.)

 At the outset, this Court notes the untimely nature of this objection.  GAIC failed to timely object to CKM's Initial Disclosures, despite telling the Court at oral argument that GAIC found the disclosures inadequate.  It was not until months later that GAIC contacted CKM to request supplementary information.  Great American did not disclose any efforts it made to lift any protective orders.  GAIC raised the present objection only after receiving more particularized information from CKM.  Despite GAIC's assertions of prejudice from "eleventh hour disclosure"

of the Supplemental Initial Disclosures, this Court finds no such evidence exists.  (Pl.'s Mem. Supp. Emergency Mot. Strike 14-15.)

The lack of prejudice stems in part because CKM present evidence that GAIC was aware previously of the breadth of materials available in the vast, apparently un-indexed Alabama litigation database.  During argument, counsel for CKM noted that the bulk of the documents in the database were produced by Gross and other defendants, not CKM.   It is clear that for the past two years parties have been mired in several lawsuits arising from related factual circumstances. Great American, though not a party below, likely is contributing costs to the upkeep of the database at issue, and counsel for CKM indicated GAIC had been invoiced for it.   While Great American likely did not know about these unprotected 43 documents, the Court will not impose the sanction of striking them on this belated objection.  Because GAIC itself delayed action because the disclosure is limited, and because harm can be ameliorated by actions short of exclusion, the documents will remain in the case to the extent they address the $10 million transfer.  Consistent with the ruling of this Court, any document referencing any financial transaction other than the $10 million transfer shall be excluded as beyond the scope of permissible discovery in this case.

The Court DENIES GAIC's Emergency Motion to Strike Defendants CKM's Supplemental Initial Disclosures as to any documents pertaining to the $10 million transfer. (Docket No. 165.)

**F.      Defendants CKM's Motion for Protective Order from GAIC's Rule 45 Subpoena**

CKM move for a protective order barring Great American from taking the deposition of the Virginia Commissioner of Insurance or General Reinsurance Corporation ("Gen Re"). (Docket No. 173.)  As to Gen Re, Great American noticed up four deposition topics: three pertain to the $10 million transfer, and the fourth to the authentication of documents attached to the notice.  (Defs. CKM's Mot. to Quash, Ex. A.)  Gen Re is not a party to this action; CKM's motion for protective order appears premised on the burden it would cause CKM in defending such an unanticipated deposition covering unforeseen topics.[9]

For good cause shown, a court may grant a protective order if required to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c).  Rule 26(c)'s good cause requirement indicates that "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."  *S.E.C. v. Dowdell*, 3:01CV00116, 2002 WL 1969664, *2 (W.D. Va. Aug. 21, 2002)(*quoting In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998)).

CKM's motion lacks certification of having held a good faith conference to seek resolution of this matter, as required by the Federal and Local Rules.  *See* Fed. R. Civ. P. 26(c). In addition to this procedural flaw, the Court finds that Defendants fail to carry their heavy

---

[9] GAIC contends that CKM lack standing, though it cites cases only relevant to standing for motions to quash subpoenas.  CKM withdrew its previously filed Motion to Quash Rule 30(b)(6) Deposition of General Reinsurance Corporation.  (Docket No. 173).  Rule 26(c) states that a protective order may be sought by "a party or by the person from whom discovery is sought."  Fed. R. Civ. P. 26(c).  Because CKM are parties to this action, they have standing.

burden of good cause.  Their sole argument rests on the premise of judicial estoppel, an argument

that this Court has previously rejected.  *See supra* § II.B.  Defendants CKM fail to make any

specific connections between the deposition topics Great American seeks and the underlying

MDL cases they claim are unfairly intruded upon.  Their general assertions that the topics

"entangle[] with the complex underlying MDL cases" not only points to the "unnecessary

entanglement" prong of the test rejected by the Fourth Circuit, but also does not adequately

particularize the need for Court intervention into this line of discovery.  (Defs. CKM's Mot. to

Quash 3.)

The Court shall DENY Defendants CKM's Motion for a Protective Order as to the

Deposition of Gen Re.  (Docket No. 173.)   Consistent with the findings above and with the

Court's earlier Order (Docket No. 181) and absent any showing of undue burden regarding

discovery as to the $10 million transfer itself, the Court permits discovery limited to

authentication, the guilty plea, and to issues surrounding the $10 million transfer.

The timing of this deposition as to these limited subjects and the scope of discovery is a

different matter.  CKM correctly objects that GAIC gave notice as to any deposition regarding

any topic at the virtual close of discovery.  The Court addresses the timing and scope of any

deposition sought below.

### G.       Defendant Gross's Second Motion for Protective Order

On May 24, 2007, this Court granted in part Defendant Gross's Second Motion for a

Protective Order in part.  (Docket No. 181.)  Because GAIC's Rule 30(b)(6) notice was untimely

as to Defendant Gross, the Court permitted Gross's deposition to proceed only for the purpose of

authentication.  The Court reserved ruling on Defendant Gross's argument as to judicial estoppel.

As discussed, *supra* § II.B, this Court has declined to find that GAIC is judicially estopped from raising certain forms of evidence.  Absent a showing of undue burden specific to discovery regarding the $10 million transfer, GAIC may seek discovery pertinent to the guilty plea and $10 million transfer.

Accordingly, this Court GRANTS IN PART and DENIES IN PART Gross's Motion for Protective Order.[10]  (Docket No. 176.)  In addition to the authentication questions previously permitted, GAIC may depose Defendant Gross regarding only the $10 million transfer and the guilty plea identified in its Amended Complaint.  In Exhibit A to GAIC's Notice to Take Gross's Rule 30(b)(6) Deposition, GAIC may inquire into ¶¶ 1-4, as well as the portions of ¶¶ 15-17 pertinent to the $10 million transfer.

The timing of this deposition as to these limited subjects and the scope of such discovery is a different matter.   Gross correctly objects that GAIC effectively gave three business days notice as to any deposition regarding any topic.   The Court addresses the timing scope of any deposition sought below.

### H.    Report and Recommendation as to CKM's Motion for a Stay Pending Coordination of Discovery Matters

Defendants CKM move in the alternative for a stay of the litigation pending "some meaningful coordination of discovery with the MDL proceeding" ongoing in Tennessee federal court.  (Defs. CKM's Mem. Supp. Mot. Stay 2.)  CKM distinguish this Motion to Stay from asking the court to abstain by stating a need for "fair, intelligent and courteous effort at coordination with the MDL Court" and arguing that the power to coordinate falls well within the

---

[10]  The Court GRANTS IN PART AND DENIES IN PART Defendants CKM's Motion for Protective Order as to the deposition of Gross on the same basis.  (Docket No. 173).

court's "sound, discretionary, management authority." (*Id.* at 5.)  In essence, CKM claim the

overlap in litigation warrants a stay of this action in order to prevent advance litigation as to any

portion of the MDL.   Placed alongside CKM's adamant claim that any crossover in discovery

should require judicial estoppel, this Court cannot readily distinguish CKM's alternative motion

for a stay from the position it took in *GAIC I*.

However, as to the timing and scope of discovery, this Court agrees that Great American

served these deposition notices so close to the conclusion of discovery as to warrant some relief

in responding.  Given the potential of extensive discovery responses even to these more limited

topics, this Court sees a need to carefully regulate the conduct of discovery as it moves forward.

Recognizing the broad discretion a district court holds in managing its docket, the Magistrate

Judge makes the following recommendation.

District courts enjoy broad discretion in managing discovery matters.   The Supreme

Court has noted that  "[r]ule 26 vests the trial judge with broad discretion to tailor discovery

narrowly and to dictate the sequence of discovery. . . ." *Crawford-El v. Britton*, 523 U.S. 574,

598 (1998); *see also Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996)

(observing that District Courts "enjoy nearly unfettered discretion to control the timing and scope

of discovery").

In an effort to facilitate "prompt and efficient resolution of the lawsuit," *Crawford-El,*

523 U.S. at 598, this Court RECOMMENDS that the close of discovery in this case be extended

for forty-five (45) days, until August 10, 2007, for the sole purposes of conducting the limited

depositions discussed above, and for allowing CKM and Gross time to respond to the limited

discovery permitted above.  Any deadlines that have elapsed under the District Court's Pretrial

Order, including expert disclosure deadlines, remain expired.   However, any prospective

deadlines, including the filing of dispositive motions and trial, would be suspended for a period

of forty-five (45) days.

The Court also RECOMMENDS that the parties contact the Honorable James R. Spencer

as soon as practicable, but no later than June 18, 2007, so that a new trial may be set on the

docket.

The Parties are ADVISED that they may file specific written objections to the Report and

Recommendation as to CKM's Motion to Stay and the Magistrate Judge's Recommendation that

the close of discovery be extended to August 10, 2007 ("Section II.H of the Magistrate Judge's

Opinion"), within ten (10) days of the date of entry hereof.  Each objection should be labeled

with the corresponding heading from the Report and Recommendation, should be numbered, and

should identify with specificity the legal or factual deficiencies of the Magistrate Judge's

findings.  Failure to file specific objections in a timely manner to the Report and

Recommendation may result in the entry of an Order dismissing the Complaint.  *See* Fed. R. Civ.

P. 72(b).  It may also preclude further review or appeal from such judgment.  *See Wright v.

Collins*, 766 F.2d 841, 845 (4th Cir. 1985)(noting the general rule that "a party who fails to

object to a magistrate's report is barred from appealing the judgment of a district court adopting

the magistrate's findings.")

### III.  Conclusion

For the reasons stated above, the  motions are GRANTED in part and DENIED in part.

The Court also RECOMMENDS that the close of discovery be extended until August 10, 2007.

An appropriate Order shall issue.

_____/s/_____
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date:  <u>May 29, 2007</u>

28